UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH STEPHENS and RONALD ISAACS on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ANTHONY GENTILELLO, KAREN JEFFERY, RICHARD FORTUNE, AFR FINANCIAL GROUP, INC., WALNUT STREET SECURITIES, NATIONAL PLANNING CORP., WEALTH FINANCIAL GROUP, METROPOLITAN LIFE INSURANCE COMPANY, METLIFE INVESTORS DISTRIBUTION COMPANY, METLIFE INVESTORS USA INSURANCE COMPANY,<br><br>　　　　Defendants. | Hon. Joseph H. Rodriguez<br><br><br>Civil Action No. 11-5766<br><br><br><br>MEMORANDUM OPINION<br>& ORDER |

This matter is before the Court on Plaintiffs' motion to remand and for attorneys' fees and costs [13]. For the reasons set forth below, the case will be remanded, with each party to bear its own costs.

Factual Background and Procedural History

This matter was originally filed as a putative class action, entitled <u>Deborah Stephens v. Anthony Gentilello, et al.</u>, on October 19, 2009, in the Superior Court of New Jersey, Law Division, Burlington County, at docket no. BUR-L-3489-09. Plaintiff alleged that she, and others, purchased annuities from the Defendants without a Guaranteed Income Benefit Rider (GIB Rider), which would have protected the purchasers' annuity income regardless of how the annuity actually performed on the market. Thus, with the GIB Rider, albeit at a higher cost, the purchaser would have been guaranteed a minimum level of income from the annuity, even if the annuity funds

performed below market level. (Compl., Oct. 19, 2009, ¶¶ 1-3.) Plaintiff alleged that Defendants negligently failed to attach said GIB Rider to her policy, and the policies of the putative class members, resulting in large profits for the Defendants without the benefit of the GIB Rider to the annuity for the Plaintiff and potential class members. (Id. ¶¶ 4-6.) The original Complaint alleged breach of contract, negligence, unjust enrichment, and violations of the New Jersey Consumer Fraud Act.

That Complaint was removed to this Court on November 30, 2009 by Walnut Street Securities, Inc., Metropolitan Life Insurance Company, MetLife Investors Distribution Company, MetLife Investors USA Insurance Company, Anthony Gentilello, and AFR Financial Group, Inc. Removing Defendants asserted that "Removal of this case is proper and necessary under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f) and 15 U.S.C. § 77p, which mandates that certain securities class actions brought under state law must be removed to federal court." Stephens v. Gentilello, No. 09-cv-6063, Notice of Removal, Nov. 30, 2009, ¶ 5.

On December 15, 2009, Plaintiff amended her Complaint, withdrawing the claim under the New Jersey Consumer Fraud Act while stressing that the parties and transactions at issue were located predominantly in New Jersey, and only State law claims sounding in negligence were alleged. The Amended Complaint alleged breach of contract, breach of fiduciary duty, negligence, and unjust enrichment." Stephens v. Gentilello, No. 09-cv-6063, Plaintiff's First Amended Class Action Complaint, Doc. [6].

Subsequently, the parties agreed to remand the matter back to State court, in the words of removing Defendants, "in light of plaintiff's voluntary amendment of her Complaint prior to Defendants moving to dismiss the claims barred by the Securities

2

Litigation Uniform Standards Act of 1998 ("SLUSA")." Stephens v. Gentilello, No. 09-cv-6063, Dec. 29, 2009 Correspondence to Court, Doc. [7].  At Defendants' request, the Court entered a Consent Order for Remand on February 4, 2010.  Stephens v. Gentilello, No. 09-cv-6063, Consent Order for Remand, Doc. [8].  The federal case between the parties was closed at that time.

On June 29, 2010 in State court, Plaintiff filed a Second Amended Class Action Complaint.  The allegations were essentially the same, asserting breach of contract, breach of fiduciary duty, negligence, and unjust enrichment.  Plaintiff's purpose in amending was to remove Karen Anthony and Jeffery Gentilello, substituting Karen Jeffery for them.  After obtaining leave of court, Plaintiff filed a Third Amended Class Action Complaint in State court on September 22, 2010, again asserting breach of contract, breach of fiduciary duty, negligence, and unjust enrichment.  This time, Ronald Isaacs was added as a Plaintiff and Richard Fortune and Wealth Financial Group were added as Defendants.

On October 4, 2011, this matter was again removed to this Court by Metropolitan Life Insurance Company, MetLife Investors Distribution Company, MetLife Investors USA Insurance Company, Walnut Street Securities, Inc., Anthony Gentilello, Karen Jeffrey, AFR Financial Group, Inc., Richard Fortune, and Wealth Management Group based on alleged preemption by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f) and 15 U.S.C. § 77p.  While the Removing Defendants acknowledged that none of the Amended Complaints set forth on its face a claim of fraud, they point to Ms. Stephens' deposition taken on July 20, 2011, wherein Defendants contend she alleged that her claim was based on "lies" and "intentional

misstatements" made to her by Defendants. See Notice of Removal, ¶¶ 17-19. Defendants add that the September 14, 2011 deposition of Plaintiff Isaacs revealed that his claim was also based on "lies" and "intentional misstatements" made to Isaacs by sales representative Richard Fortune. Id. ¶20. Removing Defendants contend that it was not until Isaacs' deposition that they first ascertained that the case was removable as to all parties. Id. ¶21.

Plaintiffs have now filed a motion to remand and for attorneys' fees and costs associated with the latest removal of this matter, arguing that Defendants had no objectively reasonable basis for removal.

Standard on a Motion for Remand

A case must be remanded if, at any time before final judgment, the district court discovers that it lacks subject matter jurisdiction to hear the case. See 28 U.S.C. § 1447(c). As the party removing the case, the defendant has the burden to prove that federal court jurisdiction is proper at all stages of the litigation. See Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). The district court must resolve all contested issues of fact and uncertainties of law in favor of the plaintiff. See Boyer, 913 F.2d at 111. Moreover, the court should strictly construe removal statutes and resolve all doubts in favor of remand. See Abels, 770 F.2d at 29. The strict construction of removal statutes honors Congress' power to determine the contours of the federal court's limited subject matter jurisdiction. See Bowles v. Russell, 551 U.S. 205, 212-13 (2007) (internal citation omitted) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.").

In order for removal to be proper, the federal court must have original jurisdiction to hear the case. See 28 U.S.C. § 1441(a); U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002). One basis of original jurisdiction is federal question jurisdiction. See 28 U.S.C. § 1331; U.S. Express, 281 F.3d at 389. Federal question jurisdiction applies to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If the federal court has original jurisdiction based upon federal question, the case may be removed without regard to the citizenship of the parties. See 28 U.S.C. § 1441(b). One claim conferring federal question jurisdiction is sufficient for the entire case to be removed to federal court. See id. § 1441(c). The district court, however, may exercise its discretionary powers to remand all matters to state court in which state law predominates. See id.

When a federal issue is embedded in a state law claim, the federal court has jurisdiction over the claim when it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Only a "slim category" of state law claims satisfy this test. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006). The federal interest must be substantial enough to justify turning a state law claim "into a discrete and costly 'federal case.'" See id.

Next, the well-pleaded complaint rule requires that the face of the plaintiff's complaint provide the basis for federal question jurisdiction by raising issues of federal law. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997). Federal

jurisdiction cannot arise from a defense that raises a federal question. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). The basis for federal question jurisdiction must exist within the four corners of the complaint. See id. In light of the presumption in favor of remand, district courts should remand close or doubtful cases to the state courts from which they were removed. See Abels, 770 F.2d at 29. Remand to state court avoids a later determination that the federal court is without jurisdiction, and places the case in a forum having clear jurisdiction over the case. See id. (internal citation omitted).

It is axiomatic that a plaintiff is the master of his or her complaint, "and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987); Mints v. Educ. Testing Service, 99 F.3d 1253, 1256 (3d Cir. 1996). As such, the plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392. Even where state law creates a plaintiff's cause of action, however, the "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983). That said, "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." Caterpillar, 482 U.S. at 399 (emphasis in original). See also Merrell Dow Pharm. Inc., 478 U.S. at 810, n.6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced").

6

<u>SLUSA</u>

SLUSA provides an exception to the well-pleaded complaint rule, <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 9-10 (1983), and precludes a private party from bringing a "covered class action" in federal or state court, based on state law, alleging a "misrepresentation or omission of a material fact" or the use of "any manipulative or deceptive device or contrivance" "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). The statute provides that:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging:
> (a) A misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> (b) That the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

To remove a claim under SLUSA, "the removing party must establish that the action is (1) a 'covered class action,' (2) that is based on state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) 'in connection with' [or 'involving,' for removal purposes] (5) the purchase or sale of a covered security." <u>Prager v. Knight/Trimark Group</u>, 124 F. Supp. 2d 229, 231 (D.N.J. 2000) (citing 15 U.S.C. § 78bb(f)(1)).

<u>Analysis</u>

Here, Plaintiff is attempting to advance a case on behalf of a class of New Jersey residents who used their retirement funds to purchase annuities from Defendants, who negligently purchased such annuities without GIB riders, which allegedly would have

protected the retirees' income from the annuity, regardless of the performance of the funds within the annuity on the stock market. They stress that their claims do not touch on fraud or misrepresentations, and Defendants have acknowledged that the allegations of the Third Amended Complaint contain no such claim or language.

In removing the case, Defendants cited Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294 (3d Cir. 2004) for the proposition that "the applicability of the SLUSA does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are alleged in one form or another." Notice of Removal, ¶ 21. While the complaint in that matter alleged breach of contract, unjust enrichment, and violation of state consumer protection statutes, the court found "Plaintiff's *complaint* is replete with allegations that [defendant] disseminated biased and materially misleading investment research." Rowinski, 398 F.3d at 299 (emphasis added).

The Rowinski court also found that "[w]here . . . allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA." Rowinski, 398 F.3d at 300. Subsequently, the Third Circuit clarified that where alleged misrepresentations have no bearing on whether a defendant's conduct is actionable, such allegations are not factual predicates to the plaintiff's claims; "rather, they are merely background details that need not have been alleged, and need not be proved." LaSala v. Cordier et Cie, 519 F. 3d 121, 141 (3d Cir. 2008). In such a case, SLUSA does not apply to preempt the plaintiff's claims. Id. The LaSala court stated:

8

> It is important to recognize that Rowinski did not hold that any time a misrepresentation is alleged, the misrepresentation-in-connection-with-a-securities-trade ingredient is present. (Nor does it follow that failing to make such an allegation explicit necessarily avoids the ingredient). Rather, the point we made in Rowinski was that when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary. While it may be unwise (and, in some cases, a violation of Rule 8) to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA.

Id. at 141. That is, LaSala "distinguishes . . . between an inessential factual allegation . . . and a factual allegation that while not a necessary element of the plaintiff's cause of action could be critical to his success in the particular case. The former type of factual allegation does not doom the suit, but the latter does. Brown v. Calamos, 664 F.3d 123, 127 (7th Cir. 2011).

The Third Amended Complaint in this case contains no allegations of fraud or misrepresentation, nor do Defendants claim that "'misrepresentation' is a legal element of the claims asserted in the Third Amended Class Action Complaint." (Def. Br., p. 6.) Rather, Defendants rely on Plaintiffs' deposition testimony to establish that SLUSA applies because "Plaintiffs' claims are grounded in fraud." (Def. Br., p. 7.)

Specifically, Defendants have cited to testimony from the July 20, 2011 deposition of Plaintiff Stephens. That testimony includes the following:

> Q. In the lawsuit you filed, is it your claim that representatives of AFR made intentional misstatements to you?
> MR. LALLI: Object, only that the Complaint, you know, says what it says and it stands for itself, but you can still answer.
> A. Can you repeat that again?
> BY MS. TAYLOR:

9

> Q. My -- I'm asking if it is your claim that representatives of AFR made intentional misstatements to you?
> A. Yeah.
> Q. Okay. So you aren't claiming they made a mistake, you're claiming they lied to you intentionally?
> MR. LALLI: Same objection.
> A. Yeah.

Stephens Dep. at 48:4-21.

> Q. Any other – anything else [beside that when Stephens called AFR to speak to a Fred Schepis, she was told he was not in, when in fact he no longer worked for AFR] you claim that was said to you by any representatives of AFR that was false?
> A. They told me that my money was protected, and come to find out that it wasn't, that if something happened I wouldn't be getting no money.
> Q. Now, you said they told you my money was protected. Who was "they"?
> A. Well, I think that – when I called and found out that Mr. Schepis – Fred wasn't there anymore, the person that I talked to, it was a female, she told me that.
> Q. And did anyone else tell you that the money was protected, other than that female you spoke to when you made the call?
> A. She said it wasn't protected.
> Q. She says it wasn't. Who told you it was protected?
> A. When I signed the papers, when I first went with AFR. That was my main concern.
> Q. And –
> A. And when they came to my house I asked them that several, several, several – because that was my biggest concern.
> Q. Well, what specifically did you ask?
> A. Well, my money is protected and will I be getting – if anything happens during the stock market that I would still be getting, receiving – you know, yes, you will. So, yes, that's what they told me.
> Q. Did they ever tell you that it was guaranteed that your money would not be affected in any way by the market?
> A. Yes.
> Q. And who told you that?
> A. Well, when they came to the house, Fred and him – and Mr. Gentilello[.]

Id. at 45:14-47:1.

Stephens also testified as follows:

> Q. What are your claims here? Why are you bringing this lawsuit?

10

> A. Why am I? Because what they told me, they didn't carry through. They didn't follow through what they said they were supposed to, what I was supposed to get. I was under one impression and they told me one thing and did the opposite.
> Q. Okay. So part of the claim is you didn't get exactly what you were supposed to get?
> A. Exactly.
> Q. And that thing you were supposed to get was income protection?
> A. Exactly.

Id. at 142:14-143:3.

Defendants also cite to the following deposition testimony of Plaintiff Isaacs, taken on September 14, 2011:

> Q: But my question is: And I believe you answered it, you think Rick Fortune lied to you about –
> A. Yes.
> Q. -- what you were buying?
> A. -- he did.
> Q. You don't think he made a mistake, you think he lied to you?
> MR. LALLI: Objection. You can answer the question.
> Q. Right, you think he lied to you?
> A. I don't think he made a mistake.
> Q. You think he lied to you?
> A. Yes.

Isaacs Dep. at 44:22-45:11.

> Q: O.K., but I'm saying prior to that, did anyone from MetLife or did Mr. Fortune or anyone at his company prior to that meeting ever tell you that there was a 6 percent guarantee on your annuity?
> A: Yes.
> Q. What meeting was that?
> A. I don't know.
> Q. And who said it?
> A. Rick Fortune.
> Q. And do you remember what year it was?
> A. It has to be between 2004, and 2008.
> Q. But you don't specifically recall –
> A. No.
> Q. -- what he said?
> A. I recall what he said. There is a 6 percent guarantee, you guys will never lose money in whatever he invested, that I remember.

Id. at 69:11-70:3.  Isaacs also testified:

> Q. When was the first time you ever heard anything or Mr. Fortune ever told you anything about 6 percent?
> A. From the first time I heard it, is when my wife was investing her 401(k) with him [in 2006] and he said to me, she will be in the same thing that you get. And that's when the 6 percent come up.

Id. at 39:24-40:5.

While Defendants ague that Plaintiff Stephens' "testimony makes clear that [her] claims are relying upon affirmative misrepresentations or omissions made in connection with the sale of [her] variable annuities, (Def. Br., p. 10), Plaintiffs contend that "whether or not AFR representatives told Ms. Stephens that her income was protected is . . . irrelevant to the claim that she was negligently sold an annuity without a GIB Rider. Ms. Stephens makes none of the allegations of intent, or that the Defendants stood to gain financially from deceit to trigger removal pursuant to SLUSA." (Pl. Br., p. 17.) "The court is unaware of any support for the conclusion that deposition testimony from a layman, even if he is a putative class representative, drawn out by leading questions from opposing counsel, regarding legal theories of the case and grounds for relief can alter the allegations of the class." McPhatter v. Sweitzer, 401 F. Supp. 2d 468, 477 n.15 (M.D.N.C. 2005) (finding existence of federal question, allowing removal of state court suit by telephone company employees against advisor for their retirement plan, was not established through deposition testimony of one employee, tending to show possible application of federal securities law and preemption of state claims under SLUSA; stronger showing of federal question was required). A reading of Stephens' deposition does not establish that her lawsuit is based on anything other than that Defendants failed to provide an income benefit rider to protect her variable annuity.

12

Similarly, while Isaacs testified that he was lied to by Defendant Fortune, Plaintiffs have pointed out that this alleged misrepresentation had nothing to do with the purchase of Isaacs' annuity, as it did not take place until at least two years after his annuity was purchased in 2004. (Pl. Br., p. 20-21.) Isaacs did not recall anything Fortune might have said about what Isaacs was buying at the time he was buying it. (Isaacs' Dep. at 63:18-21.) Accordingly, Isaacs' deposition testimony cannot be used to establish a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance in connection with or involving the purchase of a security.

Any testimony by Plaintiffs as to misrepresentations are the sort of background details that need not have been alleged, and need not be proved, which the Third Circuit has determined cannot serve as a basis for SLUSA removal.

Alternatively, the removal in this case was untimely. Generally, a Notice of Removal must be filed within thirty days of the service of the initial pleading setting forth the relief upon which the action is based. 28 U.S.C. § 1446(b). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

If the Court were to accept that Plaintiffs' deposition testimony constituted an "other paper" on which Defendants could base removal, Defendants necessarily "first . . . ascertained that the case is one which is or has become removable" on July 20, 2011, when Stephens was deposed. The Notice of Removal was not filed until well more than

13

thirty days later, on October 4, 2011. Thus, removal is untimely as well as improper. The Court need not decide whether Plaintiffs' claims are not separate and independent causes of action, and therefore unable to be removed until both Plaintiffs testified as to misrepresentations. As discussed above, the misrepresentation testified to by Isaacs had no connection to the sale of purchase of a covered security by him, as his annuity was purchased two years prior to the discussion with Fortune that Defendants have relied upon as a basis for SLUSA removal.

## Attorneys' Fees and Costs

Finally, Plaintiffs have requested fees under 28 U.S.C. § 1447(c). Section 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award is within the court's discretion and may be made whether or not the removal was in bad faith. In this case, Defendants have brought Plaintiffs to federal court for a second time, despite that they previously consented to remand as a result of acknowledging that SLUSA was inapplicable to Plaintiff's Amended Complaint. The claims have not changed since that time. In addition, the support provided for the second removal has been found to be tenuous, and the removal was untimely. Undoubtedly, the second removal has delayed the progress of the case and increased the Plaintiffs' costs of litigation. Nonetheless, the Court cannot say that the Removing Defendants "lacked an objectively reasonable basis for seeking removal." See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Therefore, the request for fees and costs will be denied.

<u>Conclusion</u>

For the foregoing reasons,

IT IS ORDERED this <u>14th</u> day of February, 2012 that Plaintiffs' motion to remand this matter to the Superior Court of New Jersey, Law Division, Burlington County [13] is hereby <u>GRANTED</u>, with each party to bear its own costs.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
U.S.D.J.